IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BROOKE T. SCHOPPMANN, et al.,

        Plaintiffs,

v.                                                 Civil Action No. 2:13-cv-01032

C. R. BARD, INC.,

        Defendant.

MEMORANDUM OPINION AND ORDER
(*Defendant's Motion for Summary Judgment*)

Pending before the court is defendant C. R. Bard's ("Bard") Motion for Summary Judgment [ECF No. 67]. As set forth below, Bard's Motion for Summary Judgment is **GRANTED IN PART** with respect to the plaintiffs' claims for manufacturing defect, breach of implied warranty, breach of express warranty, and negligent inspection, packaging, marketing, and selling. Bard's Motion for Summary Judgment is **DENIED IN PART** with respect to statute of limitations.

I. Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 58,000 cases currently pending, approximately 8,000 of which are in the Bard MDL, MDL 2187. In an effort to efficiently and effectively

manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions and summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order ("PTO") # 102, No. 2:12-md-2187 [ECF No. 729]. This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Schoppmann's case was selected as a Wave 1 case by the plaintiffs. PTO # 118, No. 2:12-md-2187 [ECF No. 841].

Ms. Schoppmann was surgically implanted with the Avaulta Plus Anterior Support System (the "Avaulta") at Valley View Medical Center in Cedar City, Utah. Compl. ¶¶ 9–12 [ECF No. 1]. As a result of complications allegedly caused by the Avaulta, Ms. Schoppmann brings the following claims against Bard: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages.[1] *Id.* at ¶ 14. In the instant motion, Bard moves for partial summary judgment on the grounds that it "is not at fault for the damages alleged by" Ms. Schoppmann. Mem. Supp. Mot. Summ. J. 1 [ECF No. 68].

---

[1] Bard also filed a Motion for Partial Summary Judgment on Punitive Damages Claims [ECF No. 69]. That motion is addressed in a separate order.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105

F.3d 188, 191 (4th Cir. 1997).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as Ms. Schoppmann did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W.

Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Schoppmann received the implantation surgery for the Avaulta in Utah. Thus, the choice-of-law principles of Utah guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Utah law. Utah follows the Restatement (Second) of Conflict of Laws. Thus, "[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship." Restatement (Second) of Conflict of Laws § 146 (1971). Here, the alleged wrong occurred in Utah, and Utah has the most significant relationship to the claims. Thus, I apply Utah's substantive law to the claims in this case.

### III. Analysis

Bard argues that it is entitled to partial summary judgment in this case because the plaintiffs' claims lack evidentiary support. The plaintiffs have agreed not to pursue claims for: (1) manufacturing defect; (2) breach of implied warranty; and (3) breach of express warranty. Resp. 1 [ECF No. 129]. Accordingly, Bard's Motion for Summary Judgment on the plaintiffs' claims for manufacturing defect, breach of implied warranty, and breach of express warranty is **GRANTED**. Of note, Bard has not moved for summary judgment on the plaintiffs' failure to warn claims, the

plaintiffs' design defect claims, or the plaintiffs' general negligence claims. Below, I apply the summary judgment standard to each remaining claim.

### A. Statute of Limitations

As a threshold matter, Bard argues that all of the plaintiffs' claims are barred by Utah's statute of limitations. Utah's Product Liability Act ("UPLA") provides a two-year statute of limitations for the plaintiffs' claims. Utah Code Ann. § 78B-6-706.[2] Section 78B-6-706, however incorporates the discovery rule by providing that the action "shall be brought within two years from the time the individual who would be the claimant in the action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause." *Utah Local Gov't Trust v. Wheeler Mach. Co.*, 199 P.3d 949, 951 (Utah 2008).

The Supreme Court of Utah has yet to define the precise contours of Utah's discovery rule, including whether "cause," as mentioned in section 78B-6-706, means only "identity of the manufacturer," "cause in fact," or "possible legal responsibility." Lower Utah courts, however, have interpreted the phrase, "and its cause," to mean both the identity of the allegedly defective product's manufacturer and the causal relationship between the product and the harm. *See Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 252–54 (Utah Ct. App. 1993). *Aragon* holds that discovery of "cause" requires discovery of "the identity of the manufacturer" and that "due diligence" is "that diligence which is appropriate to accomplish the end sought and which is

---

[2] All of the plaintiffs' claims are governed by the statute set forth in section 78B-6-706. *See Utah Local Gov't Trust v. Wheeler Mach. Co.*, 199 P.3d 949, 951 (Utah 2008) ("Although our statute does not define a product liability action, product liability encompasses all actions seeking money damages for injury to people or property resulting from defective products.").

6

reasonably calculated to do so." *Id.* at 252–53.

Following *Aragon*, courts applying Utah law have adopted a three-part analysis to statute-of-limitations issues under the UPLA: "[T]he UPLA statute of limitations begins to run when the plaintiff discovers, or should have discovered: (1) that she has been injured; (2) the identity of the maker of the allegedly defective product; and (3) that the product had a possible causal relation to her injury." *Hansen v. Novartis Pharms. Corp.*, No. 2:08-cv-985, 2011 WL 6100848, at \*3 (D. Utah Dec. 7, 2011) (citing *Aragon*); *see also Pratt v. Cavagna N. Am., Inc.*, No. 2:13-cv-107, 2013 WL 6146075, at \*3 (D. Utah Nov. 21, 2013) (same); *McDougal v. Weed*, 945 P.2d 175, 177 n.1 (Utah Ct. App. 1997) (reasserting *Aragon*'s holding that the statute of limitations is tolled until the plaintiff discovers "both the injury and the identity of the manufacturer" and distinguishing the UPLA from the statute of limitations for medical malpractice). With no direction from the Supreme Court of Utah to the contrary, I apply this analysis to the instant case. *See Castillo v. Holder*, 776 F.3d 262, 268 n.3 (4th Cir. 2015) ("[W]hen the state's highest court has not engaged in such statutory interpretation, a state's intermediate appellate court decisions constitute the next best indicia of what state law is . . . ." (internal quotations omitted)).

Here, although Ms. Schoppmann visited Dr. Gatherum, the implanting physician, to discuss pelvic complications, neither Dr. Gatherum's nor Ms. Schoppmann's testimony suggests that, at the time Ms. Schoppmann met with Dr. Gatherum, Ms. Schoppmann was aware of the identity of the manufacturer and that it was possibly causing her pain. To the contrary, Ms. Schoppmann testified that she

7

did not attribute her pain to the Avaulta—and, in turn, Bard—until she met with Dr. Norton in August 2012. Until that point, Ms. Schoppmann had met with several doctors who gave her reason to believe that her injuries might not be caused by the Avaulta product. In fact, several of the medical professionals Ms. Schoppmann met with could not identify the particular mesh product that Ms. Schoppmann was implanted with and referred her to doctors with more expertise. Resp. 15–16.

At a minimum, in light of the evidence proffered by Ms. Schoppmann, there is a genuine dispute of material fact as to when Ms. Schoppmann was aware of the causal connection between the Avaulta and her injuries. *See Hansen*, 2011 WL 6100848, at *3 ("[T]he UPLA statute of limitations begins to run when the plaintiff discovers, or should have discovered: (1) that she has been injured; (2) the identity of the maker of the allegedly defective product; and (3) that the product had a possible causal relation to her injury."). Accordingly, Bard's Motion for Summary Judgment with regard to statute of limitations is **DENIED**.

## B. Negligent Inspection, Packaging, Marketing, and Selling

Bard contends that the plaintiffs' claims for negligent inspection, packaging, marketing, and selling of the Avaulta fail for lack of evidence. The plaintiffs, in response, concede they will not raise this claim, but will move forward with their other negligence claims. Resp. 3–4 [ECF No. 129]. Accordingly, Bard's Motion for Partial Summary Judgment with regard to distinct claims for negligent inspection, packing, marketing, and selling of the Avaulta is **GRANTED**.

## IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion [ECF No. 67] is **GRANTED IN PART** with respect to the plaintiffs' claims for negligent inspection, packaging, marketing, and selling; manufacturing defect; breach of implied warranty; and breach of express warranty. Bard's Motion is **DENIED IN PART** with respect to statute of limitations.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 7, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE